OPINION OF THE COURT
George A. Murphy, J.
This proceeding arises out of the respondent Board’s refusal, by a divided vote, to grant a brief extension to petitioners so they could comply with a direction to place and protectively cover a pipe in front of their property to facilitate the continued flow of spring or other water along a nearby ditch. The petitioners contend that this refusal was an arbitrary and *432 illegal deprivation of their right to the beneficial use of their property pursuant to a 1982 grant of their application to subdivide a single lot into two separate lots.
"Zoning laws are by their very nature in derogation of common law property rights” (see, Moriarty v Planning Bd. of Vil. of Sloatsburgh, 119 AD2d 188, 195). Moreover, a Planning Board has no authority to rescind, directly or indirectly, an approved subdivision plat or to impose an injustice upon a landowner (see, Matter of Northbury Estates v Long Is. Light. Co., 47 Misc 2d 134).
This court has diligently read all of the minutes of the various meetings of the Planning Board since 1982 as well as the copies of the correspondence submitted by the parties, and concludes that the petitioners have been subjected to an arbitrary and illegal denial of their right to develop their property pursuant to the subdivision approval in 1982.
It is evident that from the very beginning of this matter, the petitioners were faced with a dilemma. The Board required them to risk mislocating the covered pipe before completing house plans showing where the driveway from the house would abut the roadway. At the same time, the Board mandated they provide a performance bond in such a minimal amount no surety company would issue it. The bond amount was to be $2,000 and was apparently taken out of thin air and later adjusted for "inflation” rather than being based on investigation and estimated cost as contemplated in Village Law § 7-730. In any event, the Board adamantly refused to accept an alternate undertaking in the belief it was without authority to do so, yet declined to forego the bond as permitted by both Village Law § 7-730 and the village’s own Zoning Law § 61. Thus, there was imposed on the petitioners the proverbial fate of being positioned between a rock and a hard place to borrow that often used, but meaningful phrase.
For their own best interests as well as others, the petitioners were required to bridge over the swale and ditch in order to gain access to the roadway from their driveway. They suggested a bridge as a practical and aesthetically attractive method, but the Superintendent of Highways recommended an 18-inch covered pipe. The petitioners readily agreed to the covered pipe method and that the work would require the formal approval of the village engineer. The Board then added the mandate of prompt construction or a surety bond, both of *433 which generated the subsequent delays, confusion and problems following approval of the subdivision in 1982. It is not established just how or why this small job at a concededly small cost was deemed to relate to public health, safety or welfare, especially since its completion in proper fashion was never doubted or disputed. Moreover, at all times, it required village engineer’s approval in all respects and was a condition precedent to the issuance of any building permit for the vacant lot, the latter point being especially noted by the Board chairman himself.
The Planning Board’s grant of the subdivision in 1982 obviously satisfied good planning and presented no demonstrable impingement upon public safety or welfare. The park land fee was duly tendered and accepted by the village. The Village Attorney confirmed that applications as well as approvals presented to the Board before the enactment of the upzoning were intended to be grandfathered and were not countermanded by the later legislation. The contention that because the deed to the wife was after the enactment of the upzoning somehow the Board’s official act and the approval given were nullified, lacks merit. The last minute issue over the alleged violation (by about 3%) of the 20% limitation in the Zoning Law is necessarily left to the Building Department and possibly the Zoning Board of Appeals should the matter be pursued to that extent. There are obviously multiple ways to achieve conformity in the subject circumstances and the problem is not insoluble. Certainly, the valuable rights granted by the Planning Board in 1982 may not now be denied on the basis of such belated contention. It is elementary that the law does not favor forfeitures.
The court directs that, upon approval by the village engineer of the installed pipe and cover (which approval may not unreasonably be withheld), the petitioners have the right, subject to the zoning and building code of the village relating to buildings erected upon residential lots, to use or develop their property as authorized by the subdivision granted in 1982 by the respondent Planning Board.
The parties are directed, of course, to attend to any formalities that may remain to effectuate the decision and order of this court.